**UNITED STATES of America ex rel. Ellen SIEGEL, Relator,**

v.

**Thomas L. SHINNICK and John Doe said name being fictitious, the person intended being the person in charge of the United States Public Health Hospital at Stapleton, Staten Island, New York and having custody of said Ellen Siegel, Respondents.**

No. 63–M–888.

United States District Court
E. D. New York.

Aug. 2, 1963.

Helen Minkin, New York City (Giuffre & Minkin, New York City, of counsel), for relator.

Carl Golden, New York City (Joseph P. Hoey, U. S. Atty., and G. V. O'Haire, Asst. U. S. Atty., of counsel), for respondents.

DOOLING, District Judge.

Petitioner, Helen Minkin, seeks on behalf of her mother, Ellen Siegel, an order, after inquiry, that respondents produce the body of relator before the court and that relator then be discharged from custody. Relator is presently being held at the United States Public Health Hospital at Stapleton, Staten Island, in this District; she is in isolation for the balance of the small pox incubation period

of 14 days from July 25, 1963. She is being isolated because she was in Stockholm, a small pox infected local area, on July 25, 1963 and she did not present on arrival here from Stockholm on July 25,. 1963, a valid certificate of vaccination against small pox; she stated in substance that the only vaccination to which she had reacted positively was her school entry vaccination, sixty-three years earlier; all later attempts at vaccination produced no positive reaction; the latest such "unsuccessful" vaccination was on May 31, 1963 (Ex. 4).

The facts were found orally in tentative form at the conclusion of the hearing and that part of the hearing has been transcribed. There being no apparent dispute about the underlying facts, they are now found as transcribed with ink typographical corrections and with one material change.

The suspected small pox case in Stuttgart, a person who had been in Stockholm July 14 to 17, has now been ascertained to be a case of eczema, so that the last. Stockholm case now known is that which was isolated June 22. Both counsel have supplied this datum by affidavit.

Stockholm is a small pox infected: area and has been since before July 21–25, 1963 when Relator visited Stockholm (Ex. 3, 6 pp. 372, 376; 312, 328, 360). Under the International Sanitary Regulations (W H O Regulations No. 2) [1] Articles 3, 6 (Cf. 42 C. F. R. § 71.1(1) (o) [2] the declaration that a local area is infected and that it is free of local infection emanates from the health administration of the territory in which the infected local area is situated. It does not appear that others are legally competent to (as they would be hopelessly handicapped in seeking to) make a determination on such a question as wheth-

1. 7 United States Treaties and other International Agreements (1956) 2259–2296 —cited 7 UST 2259–2296.

2. The Foreign Quarantine regulations (Part 71 of Title 42) appear to depend primarily from 42 U.S.C. § 264. Their adjustment to the W H O Regulations

reflects, no doubt, the quasi-treaty status of regulations adopted under authority of the International Agreement creating the Organization, 62 Stat., Part 3, 2679, 2685; Congress authorized the President to accept membership and participate in. the Organization 62 Stat. 441..

er or not Stockholm can now be regarded as not an infected local area on the basis that the last reported case went into isolation on June 22 and W H O Regulations No. 2 seems to provide for terminating a declaration of local infection twenty-eight days after the last reported case of small pox dies, recovers or is isolated; responsibility for applying that standard rests with the territorial health administration and depends on whether, also, all measures of prophylaxis have been taken and maintained to prevent recurrence of the disease. It is idle and dangerous to suggest that private judgment or judicial *ipse dixit* can, acting on the one datum of the date June 22 as the last identified and reported case, undertake to supercede the continuing declaration of the interested territorial health administration that Stockholm is still a small pox infected local area.

■ The Public Health Service Regulations do not conflict with W H O Regulations No. 2 although their arrangement is quite different. Relator did not arrive on an infected aircraft (42 C.F.R. § 71.87. W H O Reg. No. 2, Art. 84). Had she so arrived, isolation could have been directed on the basis of that fact, the authorities, however, taking into account previous vaccinations and the possibilities of her exposure to infection (42 C.F.R. § 71.87(b) (3); W H O Reg. No. 2, Art. 85 sd. 1(b). Where the aircraft is not infected, isolation may be imposed if the passenger is a "suspect" (42 C.F.R. § 71.88; W H O Reg. No. 2, Art. 84, sd. 2). A "suspect" is one who is considered by the health authority (medical officer in charge) as having been exposed to infection by a quarantineable disease and to be capable of spreading that disease (42 C.F.R. § 71.1(bb); W H O Reg. No. 2, Art. 1). While isolation is not to be

substituted for surveillance unless the health authority considers the risk of transmission of the infection by the suspect to be exceptionally serious (42 C.F.R. § 71.70, W H O Reg. No. 2, Art. 39 sd. 2), the judgment required is that of a public health officer and not of a lawyer used to insist on positive evidence to support action; their task is to measure risk to the public and to seek for what can reassure and, not finding it, to proceed reasonably to make the public health secure. They deal in a terrible context and the consequences of mistaken indulgence can be irretrievably tragic. To supercede their judgment there must be a reliable showing of error. The words cautioning against light use of isolation are indeed strong but the three medical men who testified manifestly shared a concern that was evident and real and reasoned.[3] Their differentiation of the case of Mr. Siegel, Relator's husband, was forthright, reasoned and circumstantially reassuring. Their conclusion, reached in obvious good faith, cannot be challenged on the ground that they had no evidence of the exposure of Relator to the disease; they, simply, were not free and certainly not bound to ignore the facts that opportunity for exposure existed during four days in Stockholm, that no one on earth could know for fourteen days whether or not there had been exposure, and that Relator, with a history of unsuccessful vaccinations, was peculiarly in a position to have become infected and to infect others. Their action in no way discriminated against Relator or singled her out for treatment different from that accorded the few others similarly situated.

The petition for issuance of the writ is therefore denied. It is accordingly

Ordered that Relator's petition be and it hereby is dismissed after hearing on the merits.

---

3. No negative inference, that voluntary submission to vaccination requires substitution of surveillance for isolation, can be drawn from 42 C.F.R. § 71.86(c); W H O Reg. No. 2, Art. 83, sd. 2. The regulation states one condition warranting isolation: refusal of vaccination; and one procedure available when vaccina-

tion is accepted: continued surveillance notwithstanding vaccination. The regulation does not exhaust the procedural alternatives nor straiten the authorities. Their procedure remains a function of the gravity of the situation as measured by their expert judgments dispassionately formed.